## In re CHAMELIN.

(District Court, M. D. Pennsylvania. January 30, 1911.)

### No. 1,346, in Bankruptcy.

BANKRUPTCY (§ 136*)—WITHHELD ASSETS—EVIDENCE.

Evidence *held* insufficient to falsify a bankrupt's claim of a loss of certain of his property by theft, so as to authorize an order requiring him to turn over additional assets to the trustee as improperly withheld.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of Julius Chamelin, bankrupt. On rule to compel the bankrupt to turn over certain property to his trustee. Referee's order denying the motion certified. Affirmed.

M. J. Martin and Morgan S. Kaufman, for trustee.

M. A. McGinley, for bankrupt.

ARCHBALD, District Judge. The stock of jewelry, which the bankrupt had on hand, when he began to make purchases in October, 1908, added to the amount of those purchases, make up the aggregate of what he was called upon to account for when he went into bankruptcy. On this is to be credited the stock, if any, that he turned over to the trustee, as well as anything that he had paid out to creditors, or on his personal account, less what he had realized meantime from sales made or bills collected. The value of his stock in October, 1908, according to his own estimate, was $1,500, and the goods that he bought after that amounted to $3,098. He paid $1,260.55 to creditors, and was at an expense on personal account of $730. And he collected $627 from December to March, in addition to having $103 on hand at the beginning of that period. There were also some sales of goods on credit. These figures may not be exact, but they will serve the purpose

The following account may therefore be stated against him:

| | | | |
|---|---|---|---|
| Goods on hand in October, 1908 (estimated)... | $1,500.00 | | |
| Goods purchased after that.................... | 3,098.00 | | |
| | | | $4,598.00 |
| Paid to creditors................. $1,260.55 | | | |
| Household and personal expenses.. 730.00 | | | |
| | | $1,990.55 | |
| Less cash on hand................ $ 103.00 | | | |
| Bills collected..................... 627.00 | | | |
| | | 730.00 | |
| | | | 1,260.55 |
| Balance to be accounted for................................. | | | $3,337.45 |

The bankrupt had practically nothing to represent this when he was put into bankruptcy, and he is called on, in consequence, to overcome the discrepancy. His explanation is that on the night of December 15, when he and his wife were at a ball, his rooms were broken into and his goods were stolen. This is an easy story to set up, and a difficult one to refute, and the burden is on him to substantiate it. And

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

yet, considering the nature of the goods and the opportunity afforded, it cannot be said to be inherently improbable. It is also sustained by considerable testimony, some of which, at least, is apparently disinterested. It is said to be discredited by the inconsistencies to be found in it, which have been discussed in argument. I agree, however, with the referee, that they are not enough to do more than arouse a suspicion. It is of no great significance, for instance, that, while the jewelry cases disappeared, the watches of customers were left undisturbed on the workbench. There was some scattering of things around the room, according to the evidence, as though parties had rummaged about in it. But, even if no custom work was taken, the explanation would not be difficult. The watches and jewelry belonging to different individuals would be easy to trace, and no experienced thief would be likely to burden himself with any such means of detection. And whatever may be otherwise said of the story, it has stood this important test: That there is nothing in the circumstances of the bankrupt or his family or friends, following the robbery, to suggest that any of them have profited by it. It is true that $541 turned up, not long afterwards, in his wife's bank account. But $541 falls far short of $3,300. And it is further explained that she borrowed this to meet the possible prosecution of her husband, which was threatened. Besides this, three full years have now elapsed, and abundant opportunity has been given to observe the consequences, which in no wise call in question the bankrupt's conduct. To all appearances he is in the same impecunious condition that he was immediately after the alleged robbery; and the case is thus devoid of those signs of prosperity which some times follow a fraudulent failure.

There was no error, therefore, in the refusal of the referee to make the order asked for, and his action is affirmed.